

Alister Dabreo Jr.
1333 Stewart Street
Seattle, Washington 98109
206.223.1601
Attorney for Eduardo S. Reyes

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
Hon. Stanley A. Bastian

| | |
|---|---|
| United States,<br><br>Plaintiff,<br><br>v.<br><br>Eduardo S. Reyes,<br><br>Defendant. | No. 4:2021-cr-06022<br><br>Motion for Revocation of Detention Order<br><br>Yakima – With argument<br><br>July 21, 2021 – 9:30 a.m. |

## I.    Introduction

Eduardo Reyes respectfully asks the Court to revoke the Magistrate's order that he be detained pending trial.[1]

Eduardo has lived in this country for twenty-four years (primarily in the Richland/Pasco area), is a U.S. citizen, has no history of substance abuse, and no criminal history apart from a misdemeanor Assault in the Fourth-Degree charge. The charges against him are that he conspired to distribute 500 grams or more of methamphetamine.[2] There is no allegation of violence, theft, or use of a firearm.

The Government has invoked the "drug-and-firearm offender presumption," shifting the burden to Eduardo.[3] Yet the burden of persuasion remains with the Government—to meet its burden of production, defense need only produce "some [relevant] evidence." *U.S. v. Jessup*, 757 F.2d 378, 381 (1st Cir. 1985). The presumption then "remains in the case as one of the elements to be considered." *Montgomery County Fire Bd. V. Fisher*, 454 A.2d 394, 400 (1983), *quoted with approval in Jessup*, 757 F.2d at 383. This preserves the fundamental notion that "[i]n our society, liberty is the norm, and detention prior to trial … is the carefully limited exception." *U.S. v. Salerno*, 481 U.S. 739, 755 (1987). Any doubts as to the propriety

---

[1] 18 U.S.C. § 3145(b) provides that a person ordered detained by a magistrate may file, with the court having original jurisdiction over the offense, "a motion for revocation or amendment of the order."
[2] ECF No. 47.
[3] ECF No. 16.

of release should be resolved in the defendant's favor. *See U.S. v. Chen*, 820 F. Supp. 1205, 1207 (N.D. Cal. 1992). "Only in rare circumstances should release be denied." *U.S. v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985). Despite the presumption, this is not that one of those circumstances.

As a long-time member of the community with quite limited criminal history, Eduardo's case does not justify the deprivation of a presumed innocent man's liberty. His pretrial detention is unnecessary and inappropriate. The Court should send him home.

## II.    Background

Eduardo is charged with a serious offense, a charge that boils down to allegations that he conspired to distribute a significant amount of an illegal substance.[4] The Magistrate granted the Government's motion for detention, finding (1) by a preponderance of the evidence that no release conditions could reasonably assure Eduardo's appearance, and (2) by clear and convincing evidence that no release conditions could reasonably assure the safety of the community.[5]

---

[4] ECF No. 47.
[5] ECF No. 46 at 5.

### III.    Discussion

**A.    The Magistrate erred in finding Eduardo to be a danger and a flight risk.**

The Magistrate's findings were not supported by the evidence. And this Court owes those findings no deference. *See U.S. v. Koenig*, 912 F.2d 1190, 1193 (9th Cir. 1990). The Court must find "by a preponderance of the evidence that the defendant poses a flight risk, and by clear and convincing evidence that the defendant poses a danger to the community." *U.S. v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991). The Court is to consider the factors listed in 18 U.S.C. § 3142(g). The weight of the evidence against the defendant is the "least important of the various factors." *U.S. v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985).

**1. Eduardo is not a danger to the community.**

The Magistrate appears to have based a large part of its finding on the weight of the evidence against Eduardo—the least important factor. The specific risk the Magistrate appears to be concerned with is twofold—a single (yet to be proved) allegation of violence and that firearms and ammunition were found in Eduardo's home.[6] The Bail Reform Act permits detention only where release "will endanger the *safety* of any other person or the community" (emphasis added).[7]

---

[6] ECF no. 46, at 4-5.
[7] 18 U.S.C. § 3142(c).

Eduardo legally owns several firearms and a large amount of ammunition;
behavior that is not uncommon in many parts of the United States, particularly
Eastern Washington. The Government does not allege that he used any firearms in
connection with the alleged illegal activity. The mere act of legally owning firearms,
found in his home, totally separate from any illegal substances that were recovered,
does not constitute an inherent risk to the safety of the community—particularly
when he is not alleged to have ever used those weapons illegally. If released, Eduardo
will not even have access to his legally owned firearms. Eduardo cannot pose a threat
with weapons he does not have. Ironically, Eduardo has never fired any of his
firearms.

The Magistrate took issue with a pending criminal charge against Eduardo in
State Court.[8] Eduardo was charged with 2 counts of misdemeanor Assault in the
Fourth-Degree at the beginning of this year. The very nature of an assault charge, of
course, is violent. However, the Court should note that this is lowest level of Assault,
not constituting serious injury to another person. The circumstances that gave rise to
that arrest bear explanation.

The allegations arose from a holiday party with family. Several uninvited guests
showed up and were asked to leave. One of the uninvited guests was carrying a

---

[8] ECF at 5.

firearm and refused to leave. Two of these guests got in the middle of a verbal

altercation occurring between numerous people, and Eduardo is alleged to have

pushed two people amidst the altercation. This single instance of alleged violence, an

all-too-common crime in Washington State, does not prove that Eduardo has a

propensity for violence, and it certainly does not amount to Eduardo posing a serious

future risk to the safety of others or the community.

**2. Eduardo is not a flight risk.**

Eduardo was born in Kennewick in 1997. He has lived, gone to school, and

worked in the Tri-Cities his entire life. He was employed full-time for the laborer's

union in this area for a large portion of his adult life. Nearly all his close family lives

here. His longtime girlfriend lives here. His friends and acquaintances are all here.

This is his home.

As with its finding on danger (and as discussed above), the Magistrate's finding

that Eduardo poses a flight risk appears to have been primarily based on its

assessment of the potential penalties and of the weight of the evidence against

Eduardo[9]—the least important § 3142(g) factor. The Magistrate found that Eduardo

faces a length period of incarceration and is therefore more likely to flee. The other

---

[9] ECF at 4, noting the "exceptionally serious" allegations and "immense quantity of drugs."
Importantly, the vast majority of those narcotics were found in a co-defendant's home, not in
Eduardo's possession.

factors apparently considered were a jail call by a codefendant and that Eduardo has "strong" ties to Mexico.[10] While it is true that he faces significant jail time, his "strong" tie to Mexico is both important and minimal all the same.

Eduardo's biological father resides in Mexico. Eduardo has done his best to maintain a relationship with his biological father, and visits when he can. Even those visits are infrequent—it is rare when Eduardo can visit him more than once a year. But Eduardo has never had a close relationship with his father. He puts in effort to keep in contact because that is the type of man Eduardo is. He should be commended for keeping this long-distance relationship with his father, a man who did not raise him and has had no substantial impact on his life. This relationship should not be used to assume that Eduardo, a man with significant, life-long ties to his community, will flee the country and start a new life with his father in Mexico.

The United States proffered information that his brother Carlos, a co-defendant, was on a recorded jail call with their mother, Lorena, who asked, in Spanish, whether she should contact someone in Mexico regarding his arrest. The Magistrate considered this information in calculating risk of flight.[11] Defense has yet to receive these transcripts. More importantly, not only is Eduardo not his brother—Eduardo has no knowledge of this phone call—but Lorena Reyes categorically denies

---

[10] ECF at 5.
[11] *Id.*

any knowledge of these alleged crimes or criminal connections in Mexico. To the best

of her knowledge, she merely asked Carlos if she should tell his father in Mexico

about his arrest.

### 3. Eduardo does not have a history of disobeying court orders.

The Magistrate notes that Eduardo's conduct relating to both his arrest and an

ensuing court appearance give rise to a concern that he will not abide by court

orders.[12] These concerns and unfounded.

As discussed above, Eduardo was arrested during a family holiday party gone

wrong. When police came to question him, he was in his room. He did not open the

door immediately when the officers ordered him to do so. Eduardo had very little

contact with police prior to this incident, and he was scared. Additionally, he had just

been in an altercation with close family. Violence—even just pushing—is not a

common occurrence in Eduardo's life. He was angry, stressed out, and scared; he

made a poor choice in the span of mere minutes.

To further support the notion that Eduardo may lack the future ability to

comply with court orders, the Magistrate points to an instance, in March, 2021,

where Eduardo failed to appear for a scheduled Pre-Trial hearing in his Assault in the

---

[12] ECF at 5.

Fourth-Degree case.[13] In the most technical of ways, yes, Eduardo failed to appear for this hearing. In reality, he was there.

The Court ordered Eduardo to appear for Pre-Trial hearing on March 26, 2021, at 10 am. Eduardo logged in to Zoom. He was put in a waiting room. He waited anxiously for the clerk to move him into the video proceedings. He continued to wait, for nearly thirty minutes. Nothing happened…until he was abruptly kicked out of the waiting room and locked out of the hearing. On this day Eduardo, and apparently other defendants, were not let into the video courtroom. So, Eduardo did what any concerned defendant would do—he immediately texted his attorney.

---

[13] *Id.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19





1

2

3

4

5

6

7

8

9



10

Ms. Norma Rodriguez, Eduardo's attorney, was granted a continuance in the matter;

11

the Court simply noted the Failure to Appear. The Court did so in order to reset the

12

clock for speedy trial purposes. Appropriately, the Court did not issue a warrant and

13

took no further action.

14

   This circumstance, all too common in courtrooms across the United States

15

since the COVID pandemic, does not depict Eduardo as a man who willfully disobeys

16

court orders. On the contrary, the text messages above show a defendant concerned

17

18

19

---

[14] Texts between Eduardo and his attorney, Norma Rodriguez, provided to the Court with Eduardo's permission.

1    with the Court's view of him, and someone who is eager to appear for his next court

2    hearing.

3        **4.    The Magistrate did leave Eduardo options.**

4        Despite its concerns, the Magistrate asserted that if Eduardo were to propose a

5    different release plan, and post "considerable financial bond," it may reconsider the

6    question of release.[15]

7        Eduardo has two options for release addresses, both submitted to Probation

8    for review. Additionally, Eduardo will be able to quickly secure a position with the

9    laborer's union should the Court release him.

10       Eduardo's family has rallied and gathered money they are willing to post as a

11   secured bond. The Reyes family is poor and does not have much to offer, but they

12   have offered what they can: $5000. They wish it were more, but this is all they can

13   afford. Their willingness to post every dollar they can muster attests to their faith that

14   Eduardo will show up and adhere to every single condition the Court orders.

15       **B.        The Court has many options in lieu of detention.**

16       The Court shall consider the factors outlined in § 3142 (g). And the Court shall

17   fashion any number of conditions outlined in § 3142 (c)(B) to assure defendant will

18   appear and ensure community safety.

19   ---
     [15] ECF at 5.

1

**1.  The § 3142 (g) factors weigh in favor of release.**

2          Eduardo does not contest the Magistrate's determination that the evidence

3    against him is strong. Regardless, the remaining § 3142(g) factors weigh

4    overwhelmingly in favor of release. As set out above, Eduardo has deep community

5    ties and no history of substance abuse, *see* § 3142(g)(3)(A). Eduardo was not on

6    probation or parole at the time of the alleged offense, *see* § 3142(g)(3)(B). As

7    discussed above, the nature and seriousness of the danger posed to the community

8    Mr. Eduardo's release would be low, *see* § 3142(g)(4). And the offense charged is not

9    one of the particularly heinous offenses listed in the statute (crime of violence; sex

10   trafficking; terrorism; offense involving a minor victim, controlled substance, firearm,

11   explosive, or destructive device), *see* § 3142(g)(1).

**6.  The Court must consider release conditions.**

12          If the Court does find Eduardo poses a risk of flight or danger, it still may

13   release Eduardo if there are conditions that would "reasonably assure" his

14   appearance and the safety of the community. 18 U.S.C. § 3142(c)(1)(B). And those

15   conditions must be the least restrictive conditions available to the Court. *Id.*

16   Eduardo's family could offer a bond; Eduardo could maintain close contact with law

17   enforcement or probation; Eduardo could wear a location tracking device. There are

18

19

1    any number of conditions that could assure his appearance and ensure the safety of

2    the community. In short, there are viable options in lieu of detention.

3                                    **IV.    Conclusion**

4         For the foregoing reasons, the Court should revoke the Magistrate's order

5    detaining Eduardo Reyes and order his release.

6

7    Dated:  July 14, 2021

8

9                                    /s/ Alister Dabreo Jr.
                                     Alister Dabreo Jr., #55373
                                     1333 Stewart Street
10                                   Seattle, WA 98109
                                     206.223.1601
11                                   Alister@bjlfirm.com

12

13

14

15

16

17

18

19

1

**SERVICE CERTIFICATE**

2

I certify that on July 14, 2021, I electronically filed the foregoing with the

3

Clerk of the Court using the CM/ECF System, which will notify Assistant United

4

States Attorney Caitlin A. Baunsgard.

5

/s/ Alister Dabreo Jr.
Alister Dabreo Jr., #55373
1333 Stewart Street

6

Seattle, WA 98109
206.223.1601

7

Alister@bjlfirm.com

8

9

10

11

12

13

14

15

16

17

18

19